# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-cv-00209

| | |
|---|---|
| GEGORGE HIRAPETIAN,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF CHARLOTTE,<br><br>Defendant. | ORDER |

THIS MATTER is before the Court on Defendant City of Charlotte's Motion for Summary Judgement pursuant to Fed. R. Civ. P. 56(b), (Doc. No. 17), with supporting memorandum (Doc. No. 17-1). The Court issued a Roseboro Notice to Plaintiff on June 2, 2011, informing Plaintiff of his burden in confronting Defendant's Motion. This Motion has been fully briefed and is ripe for decision. (Doc. Nos. 18, 22, 27, 29). For the reasons set forth, Defendant's Motion is GRANTED.

## I. BACKGROUND

Plaintiff George Hirapetian, who is proceeding *pro se,* filed suit on April 30, 2010, against Defendant seeking relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et. seq*., ("Title VII") for discrimination based on his national origin, accent, and for retaliation. (Doc. No. 11). Additionally, Plaintiff alleges claims under North Carolina common law for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention and supervision. Id.

Plaintiff was born in Soviet Georgia in 1959 and is of Armenian descent. (Doc. No.17-1). Plaintiff immigrated to the United States in approximately 1999 and is now a Citizen of the United

States. Id. Prior to immigrating, Plaintiff obtained the equivalent to a Masters Degree in Civil Engineering from Yerevan Polytechnic Institute in 1981. Id.

On March 12, 2007, Plaintiff was hired by the City of Charlotte as a Contract Estimator in the Street Maintenance Division ("SMD") of the Charlotte Department of Transportation. In this position, Jeff Black directly supervised Plaintiff. (Black Aff. ¶3). Layton Lamb was the overall manager of the SMD, two levels above Mr. Black. (Lamb Aff. ¶2-6).

Due to the abundance of Plaintiff's filings, Plaintiff's exact allegations are difficult to discern, but it appears to the Court that the gravamen of Plaintiff's complaint is that Mr. Black and Mr. Lamb discriminated against him and denied him opportunities to equally compete for open positions. (Doc. No. 11). Additionally, Plaintiff claims that throughout his employment, he was exposed to disparaging comments about his national origin and accent from Mr. Black and Mr. Lamb. (Hirapetian Aff. ¶25).

Plaintiff asserts that after working for the SMD as a Contract Estimator, he began applying for open jobs with the City of Charlotte for which he felt he was qualified. (Doc. No. 11 ¶9). Plaintiff claims to have applied for approximately thirty-two (32) to forty (40) such positions. Id. at ¶11. From these numerous applications, Plaintiff received only a single interview for the position of Operation Supervisor. Id. Defendant did not offer Plaintiff this position. In December 2008, due to his frustration with not receiving interviews and from being rejected from the Operation Supervisor position, Plaintiff approached Mr. Lamb about his lack of success. (Hirapetian Aff. ¶11). Mr. Lamb informed Plaintiff that his education was not viewed as equal to an American education because it was obtained in a foreign country. Plaintiff also alleges that this, along with concerns about the ability to be understood due to his accent, was the reason given by a member of the

interview panel that Plaintiff was not selected for the Operation Supervisor position. (Doc. No. 11 ¶14).

Based on these allegations, Plaintiff filed his first complaint with the Equal Opportunity Employment Commission ("EEOC") on April 22, 2009, for national origin discrimination. (Exh. 3). Defendant responded to this compliant alleging that, although a specific reason could not be articulated, Plaintiff likely did not receive interviews because he did not represent himself well in his applications. Id.

Plaintiff sent emails to various supervisors and human resources personnel raising his concerns about discrimination and contends these emails were ignored. (Doc. No. 11 ¶21-23). Defendant claims Plaintiff used these emails to air his personnel grievances and widely disseminated them among City employees. (Doc. No. 17-1). Defendant claims Plaintiff was warned not to abuse the city email system in this fashion and, after he continued to send personal emails from his city email account, Defendant ultimately suspended him for a two-day period on May 18, 2009. (Exh. 8). Plaintiff believes Defendant suspended him in retaliation for filing his EEOC claim less than a month earlier. (Doc. No. 11 ¶18).

On January 10, 2010, Plaintiff sent an email to Charlotte Mayor Anthony Foxx and other members of Defendant's senior management accusing Mr. Lamb of "Nazism" and stating "I am warning you that something unpleasant or awful will happened [sic] if you leave me in this office." (Exh. 2). Defendant interpreted this email as a threat of workplace violence and subsequently terminated Plaintiff on January 20, 2011. (Exh. 13). Plaintiff claims that he did not intend this statement as a threat, but rather was further voicing his frustration with his position. (Doc. No. 11 ¶25).

Following his termination, Plaintiff filed his second complaint with the EEOC for retaliatory termination on January 21, 2010. (Exh. 10). The EEOC granted Plaintiff his right to sue on January 27, 2010, and granted him ninety days to file suit from the date plaintiff received notice of his right to sue in the mail. Id. On April 30, 2010, Plaintiff filed suit. (Doc. No. 1). On November 18, 2010, Plaintiff was granted leave to amend his complaint, (Doc. No. 10), and subsequently filed an amended complaint the next day. (Doc. No. 11). Defendant moved for summary judgment on April 27, 2011.[1] (Doc. No. 17).

## II. DISCUSSION

### A. Standard of Review

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. As the Supreme Court has observed, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003)(emphasis in original; citation omitted).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522(citing

---

[1] The Court rejects Defendant's assertion that Plaintiff was not timely in filing his lawsuit as there is no evidence that Plaintiff received notice of his right to sue prior to January 30, 2010, and therefore did not comply with the ninety day limit.

Celotex Corp. v. Catrett, 477 U.S. 317, 325(1986)). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

### B. National Origin and Accent/English Discrimination Claims

Plaintiff's Title VII claims are analyzed under the three-part burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Applying this framework, Plaintiff must first establish a prima facie case of employment discrimination by producing evidence to fulfill four criteria related to the employment. Id. at 802. If Plaintiff provides credible evidence of all four criteria, there is a presumption of discrimination. At the second step, the burden shifts to Defendant to provide some legitimate nondiscriminatory reason for its employment decision. Id. If the employer provides a nondiscriminatory reason for its decision, the burden then shifts back to Plaintiff to show by a preponderance of the evidence that Defendant's proffered reason is pretextual. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Defendant is entitled to summary judgment if Plaintiff fails to establish a prima facie case of discrimination or later fails to raise a material factual dispute concerning the employer's non-discriminatory reason for the alleged discriminatory act. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

To establish a prima facie case of discriminatory action, Plaintiff must show "(1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly-qualified applicants outside the protected class." Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005).

In his first and second claims, Plaintiff alleges that he was subjected to discrimination on the basis of his national origin and accent/English ability in the promotion process by Defendant. (Doc.

No. 11). The Court assumes, without deciding, that Plaintiff has put forth sufficient evidence to sustain the first three elements required for a prima facie case for these claims. However Plaintiff has entirely failed to produce any evidence that the positions were actually filled by similarly-qualified applicants outside his protected class. Because Plaintiff failed to produce evidence sufficient to establish a prima facie case, Claims One (1) and Two (2) fail as a matter of law, and Defendant is entitled to summary judgment for these claims.

### C. Retaliation Claim

Under Title VII it is unlawful for an employer to retaliate against an employee because he has made a good faith complaint of Title VII discrimination. 42 U.S.C. § 2000e-3 (a); Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir. 1999). Again Plaintiff proceeds under the burden-shifting framework from McDonnell Douglas. A plaintiff may prove retaliation under the burden-shifting framework of McDonnell Douglas by first establishing a prima facie case for retaliation. To prove a prima facie case of retaliation, Plaintiff must show (1) that he engaged in a protected activity, (2) Defendant took adverse employment action against him, and (3) there is a causal connection between the two. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). If Plaintiff establishes a prima facie case, then the burden of production shifts to Defendant to produce evidence that Defendant took the adverse employment action for a legitimate, non-retaliatory reason. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). If Defendant meets its burden of production, then Plaintiff must prove by a preponderance of the evidence that the employer's stated reason for taking the adverse employment action was in fact a mere pretext for retaliation. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

In his third claim, Plaintiff alleges that he was terminated in retaliation for his complaints for unlawful discrimination on the basis of national origin. However, even assuming (without

deciding) Plaintiff can establish a prima facie case of retaliation, summary judgment is appropriate because Plaintiff has failed to provide sufficient evidence that Defendant's legitimate, non-retaliatory reason for terminating him is pretextual. Defendant alleges that Plaintiff was terminated because of a belief that Plaintiff's January 12, 2010 email, (Exh. 2), "constituted a real threat of violence in the workplace." (Reiger Aff. ¶12). This email, which Plaintiff sent to the Mayor of the City of Charlotte and others, accused Mr. Lamb of supporting "Nazism" and stated "I [Plaintiff] am warning you that something unpleasant or awful will happened [sic] if you leave me in this office." (Exh. 2). The Court recognizes that the threat of workplace violence is a valid, non-discriminatory basis for termination, and therefore finds Defendant has met its burden. See Clark v. Runyon, 218 F.3d 915, 919 (8th Cir.2000) ("Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee.")(citation omitted); Chatfield v. Shilling Const. Co., Inc., 232 F.3d 900, 2000 WL 1531846 *2 (10th Cir. 2000) (unpublished)(hold that threats of violence can constitute legitimate, nondiscriminatory reason for terminating the employee); see also McHugh v. Mayor of Baltimore, 2011 WL 1135853 *9 (D.Md. 2011) (ruling that termination for threats of violence was justified). As Plaintiff has not asserted any evidence that this stated reason was a mere pretext, Claim Three (3) fails as a matter of law, and Defendant is entitled to summary judgment for this claim.

### D. Intentional and Negligent Infliction of Emotional Distress Claims

Plaintiff seeks damages for intentional and negligent infliction of emotional distress in Claims Four (4) and Five (5) of his complaint. "The essential elements for an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" Waddle v. Sparks, 441 S.E.2d.

22, 27 (N.C. 1992)(quoting Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981)). Likewise "[t]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstrics & Gynecology Assoc., P.A., 395 S.E.2d 85, 97 (N.C. 1990).

To succeed under either theory, Plaintiff must show that he did in fact suffer from severe emotional distress. "[T]he term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id.(emphasis added). In this case, Plaintiff has failed to offer medical documentation or any other type of evidence that he has suffered any type of severe emotional distress, and thus Defendant is entitled to summary judgement on Claims Four (4) and Five (5).

### E. Negligent Retention and Supervision Claim

To establish a claim for negligent retention and supervision, Plaintiff must demonstrate that (1) Defendant's employees committed tortuous acts, and (2) that prior to the act, Defendant knew or had reason to know of the employee's incompetency. See Smith v. First Union Nat. Bank, 202 F.3d 234, 249-50 (4th Cir. 2000). As the Court has granted summary judgment in Defendant's favor for all tortuous acts alleged by Plaintiff, the first element of this claim cannot be met and therefore the Defendant is entitled to summary judgment on Claim Six (6). See Waddle, 441 S.E2d at 30.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion fo Summary Judgement is GRANTED.

The Clerk is respectfully DIRECTED to CLOSE THE CASE and to send a copy of this Order to 15968 Cumnor Ln. Charlotte, NC 28277, Plaintiff's address of record, and to counsel for Defendant City of Charlotte.

IT IS SO ORDERED.

Signed: July 21, 2011

Graham C. Mullen
United States District Judge